# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| BRIONNA AUBREY,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CHECKR, INC.,<br><br>　　　　　Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Brionna Aubrey ("Plaintiff") brings this action on an individual basis, seeking statutory and other damages against Defendant Checkr, Inc. ("Checkr") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

3. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to

ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies.

4. The FCRA provides consumers with a private right of actions against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

5. Defendant Checkr has produced and sold consumer reports concerning Plaintiff's background that wrongfully reported Plaintiff's criminal history by reporting a criminal case as "pending" when it had been rejected by the district attorney's office.

6. As a result of Checkr's wrongful reporting, Plaintiff was damaged by, without limitation, loss of employment, suffering harm to her employment qualifications, loss of income, and considerable stress and anguish.

## PARTIES

7. Plaintiff is a natural person and resident of the State of Texas and qualifies as a "consumer" as defined and protected by the FCRA.

8. Defendant Checkr, Inc. is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f), as it "regularly engages in whole or in part in the practice of assembling or evaluating credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. Defendant Checkr is a Delaware corporation that maintains its primary place of business at 1 Montgomery Street, San Francisco, California 94104.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Defendant regularly conducts business within the State of Texas, and violated Plaintiff's rights under the FCRA in the State of Texas as alleged more fully below.

10. Venue is proper in this District under 28 U.S.C. 1391(b) because Plaintiff resides in this District, Defendant conduct regular business in this District, and communications giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

11. Since 2017, Plaintiff has earned her income primarily as a driver-partner for rideshares, including Uber.

12. In or around early December of 2022, Plaintiff applied to work as a driver-partner for an additional rideshare, Roadie. This role was to be in addition to Plaintiff's primary source of income from her work with Uber.

13. On or around December 15, 2022, Plaintiff received two emails from Defendant, each notifying her that Defendant Checkr had provided a consumer report containing potentially adverse information to Roadie and Uber, respectively.

14. Plaintiff was understandably confused, as she was not aware that when she applied for Roadie, Checkr would additionally furnish a copy of a new background report to Uber.

15. Regardless, Plaintiff found herself locked out of accessing her Roadie to complete her processing as a driver-partner.

16. On December 16, 2022, Plaintiff received an "Pre-adverse action notice" email from Uber, citing the Checkr report and stating that she may be disqualified from eligibility to use Uber as a driver-partner due to the reporting of "CHARGE: VIOL PROTECTIVE ORDER

(DISPOSITION: CASE PENDING)." To Plaintiff's dismay, she found she had also been locked out of accessing Uber as a driver-partner, her primary source of income.

17. The report provided by Defendant to each employer, dated December 15, 2022, designates Plaintiff's employment consideration status as "consider". Upon information and belief, the sole basis for this designation is based on a single result from the report's criminal "county searches" section.

18. The report listed one criminal incident from Dallas County, Texas involving a misdemeanour charge filed November 25, 2022 (Case No. MA2220857) (the "0857 Case"). The entry listed the disposition as "CASE PENDING".

19. Plaintiff was shocked, as she had confirmed with her public defender that the Dallas County District Attorney's Office had rejected this case, and it would thereby not be filed in the courts.

20. On or around December 16, 2022, Plaintiff initiated a dispute with Checkr, asserting that the 0857 Case was being reported inaccurately, and explaining that "[t]he case was rejected by the district attorney office. I spoke to the district attorney's office and was sent a[n] email as well as paper work showing the case is rejected and will not go through. If needed you can contact the district attorney at (214) 653-3600 they will let you know the case has been rejected and thrown out."

21. Within 30 days of receipt of Plaintiff's dispute, Defendant was required to investigate the disputed information and to correct or delete the inaccurate information.

22. However, Defendant failed to do an adequate investigation of the Plaintiff's dispute, and on December 20, 2022, Plaintiff received a "Reinvestigation Complete" email from

Defendant, stating that they had determined that the information originally reported "is accurate and complete."

23. Plaintiff was understandably frustrated, as she had not only been denied the employment opportunity with Roadie as a result of this inaccuracy, but had further been locked out from being able to earn income through Uber since the time that the Defendant had furnished the inaccurate report.

24. On or about December 30, 2022, Plaintiff initiated a second dispute with Defendant via certified mail, reiterating that her case had been rejected by the district attorney's office and including a new letter she had obtained indicating the same.

25. Defendant received Plaintiff's dispute letter on January 7, 2022.

26. On January 12, 2023, at approximately 11:46 AM, Plaintiff received an email from Defendant stating that "Your Roadie background check is complete." Attached was an amended copy of Plaintiff's consumer report. However, the status was still listed as "Consider", the 0857 Case was still listed, and the disposition had been altered to "REJECTED BY DA" with a disposition date of Dec 1, 2022.

27. Almost immediately after, at approximately 11:47 AM, Plaintiff received a second email from Defendant stating that "Your Roadie background check is complete." This report listed her status as "clear", and the 0857 Case was removed.

28. Plaintiff then found she was able to reinitiate her employment with Uber and her applications with Roadie. However, the damage was already done.

29. As a direct result of Defendant's inaccurate reporting, Plaintiff has been damaged.

30. Because of the inaccurate information provided to Plaintiff's employer and prospective employer by Defendant, Plaintiff's ability to work as a driver for both Uber and Roadie was removed.

31. As a direct result, Plaintiff has suffered severe distress and mental anguish, largely due to the frustration in losing her primary source of income and the damage to her reputation from having this inaccurate case information distributed as if she were a criminal.

32. It is patently inaccurate and/or materially misleading to report Plaintiff's case as "Pending" when it had been rejected by the District Attorney's office.

33. Upon information and belief, had Defendant not erroneously and inaccurately reported Plaintiff's rejected charge on her background report, Plaintiff would not have been removed from her position with Uber and would not have been denied her position with Roadie.

34. Upon information and belief, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides to employers.

35. Upon information and belief, Defendant knowingly and willfully maintains deficient procedures because reporting more information is more profitable than reporting less and potentially leaving information off of a consumer report.

36. For example, upon information and belief, Defendant allowed a rejected case record to appear on Plaintiff's consumer report without first confirming the accuracy with the actual court or court records, which are readily and publicly available, and despite Plaintiff explicitly providing the district attorney's office phone number in her dispute.

37. Defendant regularly seeks out and procures criminal case information with the intention of including it in the consumer reports it sells for profit.

38. Defendant knows or has reason to know the effect of a sealing order has on a consumer's criminal record.

39. Instead of employing reasonable procedures as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own employment screening products.

40. Alternatively, upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy

41. Defendant, a sophisticated employment screening consumer reporting agency, is aware that criminal information is often inaccurate or incomplete.

42. Upon information and belief, Defendant purchased Plaintiff's information from one or more third-party vendors that merely compile criminal data from various online sources without verifying its accuracy with actual court records.

43. Upon information and belief, none of Defendant's third-party vendors warrant the accuracy of the information they sell.

44. Upon information and belief, Defendant does not exercise due diligence in ensuring it is contracting with and/or utilizing reliable third-party vendors.

45. Upon information and belief, Defendant does not conduct periodic quality assurance audits to ensure that it is receiving reliable consumer information from its third-party vendors.

46. Upon information and belief, Defendant has been sued by consumers under the FCRA in the past for erroneously reporting inaccurate criminal records.

47. Therefore, Defendant has notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate consumer information.

48. Upon information and belief, Defendant knew that the furnisher or third-party vendor provides inaccurate consumer data with some regularity.

49. Upon information and belief, Defendant blindly relied on the information provided by the furnisher or third-party vendor despite having reason to know it may be unreliable.

50. Upon information and belief, Defendant does not maintain reasonable procedures to assure it reports consumer information with maximum possible accuracy because it would be more expensive to independently verify the accuracy of the information it includes in its consumer reports.

51. It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate consumer reporting with grave consequences.

52. Despite knowing that its procedures are unreasonable, Defendant recklessly, knowingly, and/or negligently fails to employ procedures that assure that maximum possible accuracy of consumer information compiled and published in its consumer reports.

53. Upon information and belief, Defendant does not independently investigate the information it procures from third-party vendors before including it in consumers' background reports.

54. Instead, Defendant has unreasonably decided that it is entitled to rely completely on third-party vendors to ensure the information included in its consumer reports is accurate.

55. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

56. Defendant knows that its services are used to make significant consumer decisions.

57. Upon information and belief, Defendant know or should have known that employers make decisions on employment decisions on employment status based solely on the information contained in its consumer reports.

58. Upon information and belief, Defendant knew or should have known the negative impact that reporting a consumer's inaccurate criminal record was likely to have on that consumer's employment status.

59. Upon information and belief, Defendant purchases public record information from third-party vendors.

60. Upon information and belief, those third-party vendors explicitly disclaim the accuracy of the information they provide to Defendant.

61. Upon information and belief, Defendant reports and publishes the information provided by the third-party vendors without verifying its accuracy.

62. Upon information and belief, Defendant knows or has reason to know that the third-party vendors it procures consumers' information from often provides inaccurate, misleading, and incomplete records.

63. Upon information and belief, Defendant reports and publishes unverified public records information without employing reasonable procedures to assure its accuracy because employing such procedures would cut into its profits.

64. At common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

65. As a direct result of Defendant's conduct, Plaintiff was denied employment with Roadie and removed from employment with Uber.

66. As a direct result of Defendant's conduct, Plaintiff lost out on income from Uber and Roadie from December 15, 2022 until January 12, 2022.

67. Consequently, Plaintiff wasted her time including time spent contacting her public defender for assistance, coordinating with the Dallas County District Attorney's Office, and having to prepare and submit multiple disputes.

68. As a further direct result of Defendant's conduct, Plaintiff suffered mental distress, including humiliation, embarrassment, and considerable stress from her loss in income.

69. As a direct result of Defendant's inaccurate and/or misleading reporting, Plaintiff has suffered actual damages including, but not limited to: job denial, loss of income, wasted time, financial insecurity, defamatory harm to her reputation and emotional distress, including but not limited to, humiliation, embarrassment, stress, frustration, and mental anguish.

70. Defendant's violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

71. Additionally, Defendant's violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1781o.

72. In any event, Defendant is liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## CAUSES OF ACTION

### COUNT I
### Violation of the FCRA, 15 U.S.C. § 1681e

73. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

74. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. § 1581e(b) (emphasis added).

75. Checkr violated § 1681e(b) because it failed to follow reasonable procedures to ensure the maximum possible accuracy of the information it attributed to Plaintiff in its consumer reports.

76. Specifically, Checkr willfully, intentionally, recklessly, and/or negligently violated § 1681e(b) by inaccurately and/or misleadingly reporting Plaintiff's 0857 case as "pending", despite the case having been rejected by the district attorney's office.

77. Checkr's misconduct was a direct and proximate cause of Plaintiff's injuries, as alleged herein.

78. Checkr is therefore liable to Plaintiff for its willful and/or negligent failures to follow reasonable policies and procedures.

79. As a result of Checkr's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## COUNT II
## Violation of the FCRA, 15 U.S.C. § 1681i

80. Plaintiff incorporates by reference all the preceding allegations as though fully set forth herein.

81. At all times pertinent hereto, Defendant was a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(c).

82. The FCRA provides that:

"***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph(5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
15 U.S.C. § 1681i(a)(1)(a) (emphasis added)

83. On or about December 16, 2022, Plaintiff initiated a dispute with Defendant requesting that they correct the 0857 Case information, indicating that it had been rejected by the district attorney's office and providing the office's phone number to confirm.

84. Defendant received Plaintiff's dispute, as evidenced by its response on December 20.

85. However, Defendant never adequately investigated the Plaintiff's dispute, as required by the FCRA.

86. Instead, Defendant, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

87. As a direct and proximate result of Defendant's refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

88. Checkr's violations of the §1681i were willful. Therefore, Checkr is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial, pursuant to 15 U.S.C. § 1681n.

89. Additionally, Checkr's violations of § 1681i were at least negligent. Therefore, Checkr is liable to Plaintiff for statutory and actual damages, pursuant to 15 U.S.C. § 1681o.

**PRAYER FOR RELIEF**

  **WHEREFORE**, Plaintiff demands a judgment:

i. Awarding Plaintiff statutory money damages, actual damages and punitive damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii. Awarding attorneys' fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii. Awarding any other such relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: January 16, 2022    By: */s/ Yitzchak Zelman*

               Yitzchak Zelman, Esq.
               MARCUS & ZELMAN, LLC
               701 Cookman Avenue, Suite 300
               Asbury Park, New Jersey 07712
               (732) 695-3282 telephone
               yzelman@marcuszelman.com

               *Attorneys for Plaintiff*